48 CCPA

### Application of Louis ROSSETTO and Gino F. Squassoni.

### Patent Appeal No. 6693.

United States Court of Customs and Patent Appeals.

July 7, 1961.

Rehearing Denied Oct. 24, 1961.

---

4. For this discussion, we draw no significant distinction between "PRESTIGE" and "PRESTIGE * * * * PLATE."

Morrison, Kennedy & Campbell, Washington, D. C. (Luther E. Morrison, New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

SMITH, Judge.

The sole issue here arises under 35 U.S.C. § 103 and requires a determination of whether the differences between applicants' "Photocomposing Machine" as claimed in rejected claims 21–24, inclusive, and the prior art as represented by the Broadbent (British) reference[1] and the Carlton et al. reference,[2] "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill" in the photocomposing machine art. While the Board of Appeals in its original opinion and in the opinion on the petition for rehearing discussed this issue, it did so in opinions which deal so extensively with extraneous considerations that the main issue is all but lost in some eleven pages of printed matter as it appears in the record. It seems to us

that this issue could have been decided much more expeditiously had the examiner and the board properly applied the unambiguous language of Sec. 103 to the resolution of the issue presented.

The rejected claims relate to a photocomposing machine which for the most part is shown in Broadbent. Such machines in general are devices for selectively projecting images of letters or other characters on a light sensitive film to obtain a series of photographs of individual letters or characters in the particular sequence desired. A light transparent image of the character to be photographed is placed between a light source and the film to be exposed and a shutter is actuated to make the exposure. The characters to be thus recorded on the light sensitive film may be sequentially changed in two general ways, either by mechanically moving the transparencies, or by optically focusing the different, stationary transparencies on the same point. Applicant pursued the optical method.

In essence, such a machine includes a character plate and a set of shutters for selectively exposing any desired character, a light source for illuminating the characters, a film holding member and a lens system to direct and transmit the image rays from the exposed character and focus them on a screen from which the image is transmitted to the light sensitive film.

Rejected claim 21 is the base claim from which all of the rejected claims depend. It is essentially a five element claim as will be seen from the following in which we have set out each element separately.

"21. In a photocomposing machine for producing a photographic film with a series of type lines for use in printing, the combination of

"a stationary flat font plate comprising an array of character transparencies adequate for text composition and representative of the different

1. British Patent No. 182,887, July 7, 1922.

2. U. S. Patent No. 2,515,862, July 18, 1950.

characters which make up a type font of some given point size, said character transparencies being located in different photographic positions on the font plate but arranged in the same fixed plane,

"means under selective control for projecting light rays from a series of character transparencies, one after another but only one at a time, in composing successive type lines,

"a plurality of collimating lenses, one for each character transparency in the font array, for rendering the light rays from the different selected character transparencies substantially parallel, said collimating lenses having the same focal length and a common focal plane, and the optical axes of said collimating lenses being substantially parallel and uniformly located with respect to the different character transparencies notwithstanding the varying set widths of the type characters which said transparencies represent, the font plate and the collimating lens assembly being parallel to each other and spaced apart at a fixed distance equal to the common focal length of the collimating lenses, whereby the focal plane of the collimating lenses coincides with the fixed plane in which the character transparencies are arranged,

"an image forming lens common to all of the character transparencies in the font array and having a useable area at least as great as the area of all the collimating lenses so that the parallel light rays transmitted by all of the collimating lenses will impinge upon the useable area of the image forming lens; said image forming lens thus being adapted to produce, one at a time, complete individual images of the different character transparencies, as they are successively projected for line composition, at a common predetermined position relative to the optical axis of the image forming lens,

"and a light sensitive film upon which the images thus successively produced by the image forming lens are recorded, one after another, in line formation in the order in which they are produced at said common predetermined position."

Claim 22 differs from claim 21 by providing for a removable font plate. Claim 23 specifies a single source of light and a shutter mechanism which allows exposure of only one character at a time. Claim 24 adds a honey-comb-like element to channel the light between the character transparencies and the collimating lenses.

Broadbent discloses a photocomposing machine very similar to that claimed by appellants. Corresponding to appellants' "stationary flat font plate comprising an array of character transparencies," Broadbent has "a frame designed to hold a number of partly transparent negatives or positives of type or other characters." Whatever differences there are between the two as to the font plates merely reflect the broader language used by appellants, and do not distinguish the two.

In order to project those characters onto the photographic film, appellants require "means under selective control for projecting light rays from a series of character transparencies," but Broadbent is more specific describing "separate shutters to enable the negatives or positives to be exposed individually to allow one or more illuminants to penetrate the negative or positive, or it may be made with separate compartments each containing the necessary illuminant for the negative or positive." In claim 23, appellants limit themselves to an undefined shutter system. But again appellants say nothing which could distinguish their exposure-controlling structure from Broadbent's. Like Broadbent, appellants also project their characters onto a light sensitive film.

Appellants attribute the success and practicability of their machine to the essential concept of projecting the images of stationary transparencies to a single focal point by optical means alone. For

that idea, they are again indebted to Broadbent, who states it in the following, various ways: "* * * negatives or positives of type or other characters so arranged as to be brought by means of lens or lenses to a concentric focus," or "* * * the image of the character will be projected by light to a concentric focus," or again "* * * each character having an optical system whereby all the characters are projected to a common focus * * *."

The difficulty with Broadbent's structure is suggested in the last excerpt quoted. While it may be said that appellants' characters each have an optical system also, Broadbent carried the idea to the extreme of having separate optical means for each individual character. Broadbent used an imaging lens and a prism, each appropriately shaped, for each character, so that the image of each would be focused at the same point. Appellants apparently found that complex system impractical.

A different, simpler, practical system for focusing all the images at one point was needed. Here is where the Carlton et al. patent (hereafter referred to as Carlton) becomes important. Carlton discloses "* * * a compact, efficient optical device * * * whereby light from a plurality of sources can be combined at a single focal point * * *." Carlton's device when adapted to a photocomposing machine provided the solution to the problem of perfecting Broadbent's machine.

Carlton discloses a series of television picture tubes spatially arranged so that the faces of the tubes are in a single plane. In a parallel plane, and opposite each television tube are collimating lenses which will project the light from the tubes in parallel rays to a large imaging lens, which is common to all of the tubes and their collimating lenses. Of course, the tubes and the collimating lenses are separated by a distance equal to the focal length of the lenses. Carlton intended to project identical images simultaneously to produce on a screen an image of enhanced brightness.

The only novelty to be found in the invention as claimed in the rejected claims is in essence the placement of the lens system of Carlton in the photocomposing machine of Broadbent.

Appellants argue that the two references cannot properly be combined, and they base their argument on two contentions. First, they assert, their optical system is not identical in every respect with Carlton's and their light source, font plate, and shutter mechanism are not identical in every respect with Broadbent's. Since both references would have to be altered in order to arrive at their machine, as claimed, they argue it would not have been obvious to one skilled in the art to combine the references. Second, they contend that since the Carlton reference is not in the photocomposing machine art, it cannot properly be combined with Broadbent as a basis for rejection.

While the rejected claims are not identically disclosed or described in terms by either Broadbent or Carlton, Sec. 103 provides in such a situation that "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title," if the difference would have been "obvious at the time the invention was made to a person having ordinary skill" in the relevant art.

It is our view that a person having ordinary skill in the photocomposing machine art at the time appellants' invention was made should properly be expected to know and understand the optical requirements of such a machine to the extent that it would be obvious for him to apply the Carlton lens system to the Broadbent machine.

For the foregoing reasons we affirm the rejection based on 35 U.S.C. § 103.

Affirmed.